

# NUMBER 13-09-00698-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**WILLIAM THOMAS JR.,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 117th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Vela**
**Memorandum Opinion by Justice Garza**

This is an appeal from an order revoking probation. Appellant, William Thomas Jr., contends that the trial court erred during the hearing on the motion to revoke when it: (1) considered an unalleged violation to the terms of his community service to adjudicate his guilt and assess his sentence; and (2) failed to give him credit for previous time served. We affirm.

## I. BACKGROUND

On November 21, 2008, Thomas pleaded guilty to the offense of possession of cocaine pursuant to a plea agreement. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon 2010). The trial court deferred adjudication and placed Thomas on two years' community supervision. *See* TEX. CODE CRIM. PROC. ANN. § 42.12 (Vernon Supp. 2010). Nearly a year later, on September 9, 2009, the State filed a motion to revoke when Thomas allegedly violated some of the terms of his community supervision. The court allowed Thomas to remain on community supervision, but ordered the following sanctions: (1) sixty days' jail time; (2) completion of the Coastal Bend Outpatient Program/Intensive Outpatient Program (CBOP/IOP) within sixty days of his release; (3) completion of a relapse prevention program; and (4) ninety days of curfew. Thomas served his sixty days in jail.

On December 10, 2009, the State filed its second motion to revoke. In its motion, the State alleged that: (1) Thomas's September 9, 2009 urine sample tested positive for marihuana; (2) Thomas admitted to smoking marihuana on November 9, 2009; and (3) Thomas failed to complete the CBOP/IOP program. Thomas pleaded true to all of the allegations. The trial court granted the motion to revoke and found him guilty of the underlying offense.

After the guilty finding, the trial court heard evidence about another urine sample, taken on December 10, 2009, which also tested positive for marihuana. Thomas objected to this evidence, stating that the failure to pass the December 10, 2009 urine sample was not alleged in the motion to revoke and that he was entitled to notice that this issue would be raised. The trial court stated that, "I'm not finding that [Thomas] has

2

violated [his community supervision terms] along those lines, but I am finding on your other matters with regards to the appropriate disposition. I will overrule." In other words, the trial court considered the unalleged violation only for the purposes of assessing Thomas's sentence.

The trial court revoked Thomas's community supervision and sentenced him to one year in the State Jail Division of the Texas Department of Criminal Justice. His attorney requested credit for the time Thomas served in jail as part of the sanctions he received after his first motion to revoke hearing, but the trial court refused this request. This appeal followed.

## II. STANDARD OF REVIEW

We review the trial court's decision regarding community supervision revocation for an abuse of discretion and examine the evidence in a light most favorable to the trial court's order. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981). The trial court holds broad discretion over community supervision, its revocation, and its modification. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 21. A plea of true, standing alone, is sufficient to support revocation of community supervision. *Cole v. State*, 578 S.W.2d 127, 128 (Tex. Crim. App. [Panel Op.] 1979); *Jones v. State*, 112 S.W.3d 266, 268 (Tex. App.–Corpus Christi 2003, no pet.).

## III. ANALYSIS

### A. Consideration of Unalleged Violation

By his first issue, Thomas contends that the trial court erred when it considered the December 10, 2009 urine sample which tested positive for marihuana. Thomas argues that the trial court should not have considered this violation because it was not clearly

alleged in the State's motion to revoke. He contends the trial court erred when it used this evidence to "adjudicate his guilt and assess his sentence."

The record shows that the trial court pronounced Thomas guilty before it ever heard evidence of this "unalleged violation." Thomas pleaded "true" to the September 9, 2009 drug test which was positive for marihuana, to smoking marihuana on November 9, 2009, and to failing to complete the CBOP/IOP program. Based on his pleas of "true," the trial court then stated that "I'm going to find that you have indeed violated the terms of your community supervision. I will now hear from both sides with regards to appropriate disposition." After this announcement, the State then offered the December 10, 2009 urine sample into evidence. Therefore, the trial court did not consider the finding to adjudicate Thomas's guilt.

The trial court did, though, consider the December 10, 2009 drug test to assess Thomas's appropriate sentence. The court announced that it would take the December 10, 2009 drug test into account "with regards to the appropriate disposition." Thomas argues that he was entitled to notice that this drug test would be used against him during sentencing. He cites *Gagnon v. Scarpelli*, a United States Supreme Court opinion, for the general proposition that defendants are entitled to due process during a revocation hearing. 411 U.S. 778, 786 (1973). *Gagnon* holds that the "minimum requirements of due process" for a revocation hearing include:

> (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or

4

> lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.

*Id.* (citing *Morrissey v. Brewer,* 408 U.S. 471, 489 (1972)). We note, however, that "[i]t is [also] well settled that allegations in a revocation motion need not be made with the same particularity of an indictment although such allegations must be specific enough to give the accused notice of [the] alleged violation of law contrary to [the] conditions of probation." *Chacon v. State*, 558 S.W.2d 874, 876 (Tex. Crim. App. 1977).

Here, the State's motion to revoke cited: (1) the positive September 9, 2009 drug test; (2) Thomas's admission to smoking marihuana on November 9, 2009; and (3) Thomas's failure to complete the CBOP/IOP program. Notice of Thomas's positive September 2009 drug test, combined with Thomas's admission of continued drug use in November 2009, constituted notice to Thomas that the State would raise his continuous drug use during his revocation hearing. The admission of the positive December 9, 2009 test into evidence during sentencing only provided cumulative evidence of Thomas's continued drug habit. Thomas did not claim in the trial court, nor does he now claim before this Court, that he was misled as to what he was called upon to defend against. *See Chacon*, 558 S.W.3d at 876; *Pierce v. State*, 113 S.W.3d 431, 441 (Tex. App.–Texarkana 2003, pet. ref'd). Thus, Thomas cannot argue that he was surprised or prejudiced by another positive drug test. *See Chacon*, 558 S.W.3d at 876; *see also Barocio v. State*, No. 06-02-00185-CR, 2004 Tex. App. LEXIS 803, at **8-9 (Tex. App.—Texarkana Jan. 24, 2009, no pet.) (mem. op., not designated for publication) (holding that "[b]ecause the defects in the motion to revoke did not mislead or surprise [the defendant], and therefore did not prejudice his defense, the variance between the allegations and proof was not fatal.").

Further, "the court did not base its finding upon a violation of a probationary condition separate and distinct from the one alleged in the motion to revoke probation." *Id.*; *Pierce*, 113 S.W.3d at 441. In fact, immediately prior to sentencing, the trial court stated the following:

> Mr. Thomas . . . since you first started coming, you [have not] given up that mari[h]uana. And here's the problem: when you get out, you're still going to have the mari[h]uana problem, so that means that you're probably going to be back in these courts. . . .

The positive December 9, 2009 test was not a "separate and distinct" violation from Thomas's formally alleged violations. Accordingly, its admission did not violate his due process rights. In addition, we note that Thomas has not shown how he was harmed by the admission of the December 9, 2009 drug test during sentencing. *See* TEX. R. APP. P. 44.2. For all of the foregoing reasons, we overrule this issue.

## B. Credit for Time Served

By his second issue, Thomas complains that the trial court erred when it failed to grant him credit for the time he already served in jail against his sentence. Article 42.03, section 2(a) of the code of criminal procedure provides that, "[i]n all criminal cases the judge of the court in which the defendant was convicted *shall* give the defendant credit on his sentence for the time that the defendant has spent in jail for the case, *other than confinement served as a condition of community supervision*." TEX. CODE CRIM. PROC. ANN. art. 42.03, § 2(a) (Vernon Supp. 2010) (emphasis added). Accordingly, "[t]he trial court is required to grant the [defendant] pre-sentence jail time when sentence is pronounced." *Ex parte Ybarra*, 149 S.W.3d 147, 148 (Tex. Crim. App. 2004).

The following exchange occurred during sentencing:

[Trial court]:        [H]aving found that you violated the terms of your

6

> community supervision, I'm going to revoke your community supervision. I am going to take judicial knowledge of the contents of my file, and I am going to find that you are guilty of unlawful possession of . . . cocaine.
>
> I'm going to assess your punishment at one year in a state jail facility, and that will be day for day.

[Defense attorney]: Does he get credit for time served?

[Trial court]: I think I just said one year, day for day. Clean it up.

[Defense attorney]: That would be no credit, Your Honor?

[Trial court]: That's what it means.

[Defendant]: Huh?

[Trial court]: Here's his certification.

[Defense attorney]: Thank you, Your Honor.

Thomas did not object when the trial court clarified that it would not grant credit for time served. *See* TEX. R. APP. P. 33.1(a)(1) (noting that a party must lodge a timely request, objection, or motion with specificity and obtain a ruling on the same). Further, there is nothing in the record before us which specifically indicates the time or dates Thomas served which should be credited against his sentence. *See id.*; *Broussard v. State,* 226 S.W.3d 619, 621 (Tex. App.–Houston [1st Dist.] 2007, no pet.) ("Because this necessary evidence is missing from the record, we may not modify the judgment to reflect credit for any time appellant may have served . . . ."). We assume, however, that Thomas refers to the sixty days he served in jail when the trial court considered his first motion to revoke. This time is clearly addressed by article 42.03, section 2(a) of the code of criminal procedure. It is "confinement served as a condition of community

7

supervision" and, therefore, cannot be credited towards his sentence. TEX. CODE CRIM. PROC. ANN. art. 42.03, §2(a).

Thomas urges us to follow Texas Code of Criminal Procedure article 42.12 section 15(h)(2), which provides that a trial court has discretion whether to grant credit against time served in a state jail felony facility for time confined between arrest and sentence. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 15(h)(2) (Vernon Supp. 2010). "A judge may credit against any time a defendant is required to serve in a state jail felony facility time served by the defendant in county jail from the time of the defendant's arrest and confinement until sentencing by the trial court." *Id.* Thomas contends that "the statutes are not irreconcilable" and that they "must be read in harmony to give effect to each." He claims that "the correct interpretation of these provisions must be to require credit for time spent in jail in the case not as a condition of community supervision, to prohibit credit for time spent on community supervision, and to give discretion to allow credit for any other time spent in jail between the date of arrest and sentencing in this case." Thomas's suggested interpretation fails to consider that article 42.12 section 15(h)(2) gives the trial court broad discretion to grant or deny credit. Assuming Thomas is referring to time served between his arrest and sentencing (which, as noted earlier, is not clear from the record), the trial court used its discretion to deny this credit. In light of the evidence against Thomas which supports the trial court's judgment, we cannot say that this was an abuse of discretion. *Garrett*, 619 S.W.2d at 174.

In any event, the proper way to address credit for time served is by filing a motion nunc pro tunc. *Ybarra*, 149 S.W.3d at 149. "Before we will entertain a claim of the denial of pre-sentence jail time credit, an applicant must first attempt to correct the

8

omission in the judgment by way of a motion nunc pro tunc, and that if the convicting court should decline to rule on the motion, the applicant must seek a writ of mandamus to the appropriate court of appeals to compel the convicting court to rule.'" *Ex parte Deeringer*, 210 S.W.3d 616, 617-18 (Tex. Crim. App. 2006).   If Thomas believes that the trial court erred and failed to give mandatory credit for time served that was not a part of his community supervision terms, he must follow the appropriate procedural avenues.

## IV. CONCLUSION

Having disposed of all of Thomas's issues, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
30th day of December, 2010.

9